Filed 10/28/24  In re B.W. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re B.W., a Person Coming Under the Juvenile Court Law. | B321346 |
| | (Los Angeles County Super. Ct. No. 18LJJP00784D) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| SPENCER K., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Pete R. Navarro, Juvenile Court Referee.  Affirmed in part and dismissed as moot in part.

Emery El Habiby, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Brian Mahler, Deputy County Counsel, for Plaintiff and Respondent.

———————————

## INTRODUCTION

In this consolidated appeal, Spencer K., the biological and presumed father of B.W. (born August 2016), appeals from four orders by the juvenile court:  (1) the jurisdiction findings and disposition order removing B.W. from his physical custody; (2) the reasonable services finding and placement order not returning B.W. to his custody at a six-month review hearing; (3) the placement order not returning B.W. to his custody at a subsequent hearing (and denying his request for a continuance); and (4) the termination of jurisdiction with exit orders granting shared custody of B.W. to his two presumed mothers (his biological mother and her wife), with unmonitored visitation to Spencer.

We affirm the jurisdiction findings and removal order, dismiss as moot Spencer's appeals of the interim placement orders and his reasonable services challenge, and affirm the juvenile court's termination of jurisdiction and exit orders.  We also affirm the juvenile court's order granting Spencer enhancement services at the six-month review hearing and its denial of his request for continuance.

2

**FACTUAL AND PROCEDURAL BACKGROUND**

B.W. has three parents: his mother Amanda W., his presumed mother Coressa W. (Amanda's wife),[1] and his father Spencer. Spencer first became involved in B.W.'s life after dependency proceedings began.

A.    *Dependency Proceedings Resulting in Spencer's Shared Custody of B.W.*

In 2018, the Los Angeles County Department of Children and Family Services (Department), filed a petition under Welfare and Institutions Code section 300 on behalf of then-two-year-old B.W and three of his half-siblings.[2] At the time, the children lived with Amanda and Coressa. The petition alleged the children were at risk of harm due to Amanda's history of substance abuse and failure to ensure appropriate medical treatment for one of the children, and was later amended to add a count alleging risk of harm from Amanda's history of domestic violence with Coressa. Amanda identified Coressa as B.W.'s second mother and stated B.W. "was [a] product of rape" and his father unknown.

Amanda subsequently identified Spencer as a potential father, and the Department spoke with him in December 2019. Spencer, who lived in Idaho, stated Amanda had been in touch with him over the past year and a half, it was possible he was

---

[1]    The record indicates Amanda and Coressa married in June 2017, divorced in February 2018, and remarried in December 2018.

[2]    Undesignated statutory references are to the Welfare and Institutions Code.

B.W.'s biological father based on a brief relationship he had with Amanda, and he was willing to have B.W. live with him. Spencer disclosed he had a prior substance abuse and criminal history that, as relevant here, included a conviction for domestic battery. A subsequent DNA test confirmed Spencer was B.W.'s biological father.

In February 2020, the juvenile court held the jurisdiction hearing, sustained the amended section 300 petition on the basis that the mothers' domestic violence placed B.W. at risk of harm, and ordered the Department to assess Spencer for placement and to provide virtual visitation with B.W. Spencer told the Department he wanted to establish a relationship with B.W. and have B.W. live with him in Idaho. Four months later, Spencer reported he was having virtual visits with B.W. three times a week, and wanted full custody.

In July 2020, the court held a disposition hearing and found Coressa was B.W.'s presumed mother and Spencer was B.W.'s biological and presumed father, and that it would be detrimental to B.W. to recognize only two parents. The court removed B.W. from Coressa's custody and released him to the shared physical custody of Amanda and Spencer, with his primary residence with Amanda. The court ordered family maintenance services for Spencer and Amanda, and unmonitored visitation for Coressa.

In February 2021, the Department reported B.W. was living with Amanda and appeared to be doing well. Amanda had initially stated in August 2020 that Spencer had not made contact with B.W. in over a month, and sometimes called when B.W. was asleep. By December 2020 Amanda reported Spencer contacted B.W. several times per week. Amanda reported she

4

drove B.W. to Idaho, and he stayed with Spencer for two days over Thanksgiving and two and a half weeks over winter break. Coressa, who was also living in Idaho, visited with B.W. over Thanksgiving as well.  During B.W.'s visit, Spencer reported Coressa was stalking and harassing him, and Coressa stated it was unfair Spencer was not willing to share his Christmas visit with her.

The Department reported Amanda was making "tremendous progress" in her case plan, and recommended the juvenile court terminate jurisdiction and grant joint legal and physical custody of B.W. to Amanda and Spencer.  The court noted it was unclear where Coressa as presumed mother fit into the Department's custody recommendations, and ordered the hearing continued for mediation regarding a joint legal and physical custody schedule.

The day before the March 2021 hearing, the Department received a referral stating Amanda used marijuana in the presence of the children in December 2020, traveled to Arizona with the children in February without notifying the Department, and interfered with visitation between B.W. and Spencer. Amanda told the Department she could not come in for a drug test because her leg was broken, she was upset by Spencer making false allegations against her, and she was concerned the Department allowed her alleged rapist to have contact with her child.  She later stated she had injured her leg during a physical altercation with her older son D.E. while he was having a psychiatric episode, D.E. struck B.W. in the head while Coressa was present in the home, and that D.E. was in a psychiatric hospital for assessment.

The court continued the review hearing and mediation at the Department's request.

B.    *Section 387 Proceedings, Removal of B.W. from Spencer, and the First Appeal*

In April 2021, the Department filed a section 342 subsequent petition, and a section 387 supplemental petition for more restrictive placement on behalf of B.W.[3]  The section 342 petition alleged additional risk of harm from the mothers' history and recent incidents of domestic violence; risk of harm from Amanda's mental health challenges and failure to take her psychotropic medications; Amanda leaving the children without adult supervision (in one instance resulting in D.E. striking B.W. with a bat); and Amanda's and Coressa's failure to ensure B.W. regularly participated in mental health services.

The section 387 petition alleged the previous disposition did not protect B.W. because of the mothers' ongoing violent altercations and cohabitation in violation of court orders, and recommended B.W. be placed with Spencer or in foster care.

Spencer reported he wanted full custody of B.W. and preferred B.W.'s current placement with Amanda until B.W.

---

[3]    Section 342 provides:  "In any case in which a minor has been found to be a person described by Section 300 and the petitioner alleges new facts or circumstances, other than those under which the original petition was sustained, sufficient to state that the minor is a person described in Section 300, the petitioner shall file a subsequent petition."  (§ 342, subd. (a).) Under section 387, the Department may file a supplemental petition for "[a]n order changing or modifying a previous order by removing a child from the physical custody of a parent."  (§ 387, subds. (a), (b).)

6

could be placed in his sole care, rather than foster care or placement with Coressa. He reported Coressa continued to threaten and harass him.

On May 4, 2021, the court held a detention hearing and detained B.W. in shelter care.

The next day the Department received Idaho incident reports stating that Spencer had arrests for: injury to his ex-girlfriend's one-year-old son in 2003; battery, kidnapping and false imprisonment of an ex-girlfriend in 2004; attempted strangulation of an ex-girlfriend in 2014; and domestic battery in 2015. The Department also learned Spencer was on the Idaho child abuse registry for a substantiated allegation of physical abuse of a child in 2003. As relevant here, the injuries to the infant resulted in fractures to his arm and leg, and bruising of his back and shoulder. The Department informed the juvenile court it no longer recommended release of B.W. to Spencer. The court released B.W. to Amanda and Spencer, with B.W. to reside with Amanda. The court also issued a mutual stay-away order prohibiting contact between Amanda and Coressa, and ordered monitored visitation for Coressa.

In a subsequent interview with the Department, Spencer admitted he had a criminal history but claimed the child abuse and false imprisonment charges were false. Spencer also denied B.W. was conceived through rape, and stated that Amanda told him she lied to the Department because she thought Spencer made the 2018 referral to the Department.

The Department filed an amended section 387 petition further alleging the previous disposition failed to protect B.W. because Spencer had "an extensive violent criminal history that included concealing a weapon, multiple warrants, false

7

imprisonment, attempted strangulation, domestic battery, and injury to child." The Department changed its recommendation from placement with Spencer or foster care to a recommendation of "Other."

The court ordered B.W. remain released to Amanda and Spencer, and ordered the Department to file the necessary paperwork supporting the detention of B.W. from Spencer. The Department filed an ex parte application for change of order under section 385, asking the court to terminate its prior order placing B.W. with Spencer and to detain B.W. from Spencer's custody based on Spencer's criminal history.

The court held a detention hearing on the amended section 387 petition and ordered B.W. detained from Spencer and to remain released to Amanda. Shortly thereafter, Amanda told the Department that Spencer failed to maintain contact with her for multiple days during a previous visit with B.W. in Idaho, she got into a physical altercation with Spencer when she went to Idaho to pick up B.W., and B.W. complained of arm pain and disclosed to her that Spencer would twist his arms. The court subsequently sustained the allegations of the section 342 petition based on the mothers' domestic violence and Amanda leaving the children alone without adult supervision, but ordered B.W. remain released to Amanda.

On December 3, 2021, the court held a jurisdiction and disposition hearing on the amended section 387 petition. Spencer's counsel argued Spencer was a nonoffending parent, his criminal history was many years in the past and he posed no current risk, he had completed anger management, life skills, and parenting programs in 2014, he had services for B.W. lined up in Idaho, and he had visited successfully with B.W. in Idaho

8

without incident.  Spencer's counsel asked that B.W. be released to Spencer's custody, or released to shared custody with Spencer and the other parents, with Spencer having primary physical custody.

B.W.'s counsel objected to B.W. being released to Spencer, and argued that although the criminal history was not recent, it was serious and included injury to a child.  B.W.'s counsel further argued Amanda reported a physical altercation with Spencer when she picked up B.W. in Idaho, and that B.W. told Amanda that Spencer twisted his arm and caused him pain.  B.W.'s counsel also objected to B.W. being released to Amanda, and asked that B.W. be placed with a non-relative extended family member (NREFM), the father of his half-sibling K.W.  Counsel for K.W.'s father confirmed he was willing to be a placement for B.W.

The Department asked the court to sustain the allegations and order B.W. removed from parental custody.  Coressa's counsel asked that B.W. be placed with Coressa, on the condition that Coressa reside with K.W.'s father, who was Coressa's former roommate and with whom she was coparenting K.W.  Amanda's counsel asked that B.W. remain placed with Amanda.

The court sustained both counts of the amended section 387 petition, finding by clear and convincing evidence that there was substantial danger to B.W. if he were to be returned to any of his parents and no reasonable means to protect him without removal from Spencer and the mothers.  The court found it would be detrimental to release B.W. to Spencer as a parent who resided out of state "without the court having any real supervision or any real knowledge of the circumstance of a parent who had been convicted of a violent act against an infant."  The court ordered

9

B.W. removed from parental custody and placed with K.W.'s father, with family reunification services for all three parents. Spencer's case plan consisted of drug and alcohol testing, a parenting program, and individual counseling.

Spencer timely appealed from the findings and orders at the section 387 hearing in case number B328429.

C. *Six-month Review Hearing, Placement with Coressa with Enhancement Services to Spencer, and the Second Appeal*

At the six-month review hearing, the Department reported Amanda and Coressa were participating in services and maintaining regular visitation with B.W. Coressa had moved back from Idaho to California, and the Department had liberalized her visitation to unmonitored visits. B.W.'s counsel requested B.W. be placed with Coressa, and the Department requested continued family reunification services to the mothers with discretion to release B.W. to Coressa.

The Department reported Spencer had not provided any documentation he was participating in services and had not engaged in any visitation with B.W. Spencer's counsel stated Spencer had not had any visits for six months "due to his work schedule." The court denied a request for continuance by Spencer's counsel to obtain the Department social workers' case activity notes. Spencer's counsel asked the court either to find the Department had not provided Spencer with reasonable services or order B.W. placed in his custody. Spencer's counsel argued there was no reasonable effort or contact regarding services, no indication the Department had reached out to Spencer, Spencer had not heard from the Department in over a year and received no calls back to his voice messages, and

10

Spencer was attempting to enroll in services in Idaho on his own but was on a wait list.

The court ordered B.W. placed with Coressa, with family enhancement services to Spencer and Amanda, and monitored visits for Spencer (with discretion to the Department to liberalize).  The court found continued supervision was necessary, the Department "has complied with the case plan in making reasonable efforts to return the child to a safe home," and return of the child to Coressa would not create a substantial risk of detriment to B.W.  The court made no express finding on the reasonableness of reunification services to Spencer during the six-month review period, but its order directing family enhancement services for Spencer effectively terminated his reunification services.

Spencer timely appealed from these orders in case number B321346.

D.    *Section 364 Review Hearing, Termination Findings, and the Third Appeal*

At a review hearing pursuant to section 364, B.W. remained placed with Coressa with overnight weekend visits with Amanda.  Amanda had completed a 10-week parenting program and had participated in six months of individual counseling by mid-2022.  The Department reported Spencer had not provided any documentation that he was participating in services and had not visited B.W.

The Department recommended the court continue dependency jurisdiction, order B.W. to remain with Coressa, and return B.W. to Amanda's custody, so that Coressa and Amanda would have shared physical custody.  The mothers' respective

11

attorneys asked the court to terminate jurisdiction and issue family law custody orders. B.W.'s counsel asked the court to continue jurisdiction for another six months if it placed him with the mothers.

Spencer's counsel requested a continuance to receive and review recent case activity notes for any evidence of enhancement services, and objected that there was no recommendation in the Department's report as to Spencer. Spencer's counsel asked the court to grant Spencer shared custody of B.W. or unmonitored visitation, and to provide resources and services if the court did not terminate jurisdiction.

The court denied Spencer's request for a continuance because Spencer had no statutory entitlement to enhancement services, ordered B.W. placed in the shared physical custody of Coressa and Amanda, and ordered mediation of custody and visitation. The court found continued supervision unnecessary because the circumstances of acrimony and domestic violence which brought the case before the dependency court no longer existed, terminated jurisdiction over B.W., and stayed the termination order pending the mediation and the issuance of family law orders.

Spencer timely appealed from these findings and the order placing B.W. with both mothers in case number B327389.

E.      *The Exit Order and the Fourth Appeal*
On January 11, 2023, the juvenile court held a second section 364 review hearing. The Department reported B.W. had been living with Amanda while Coressa stabilized her housing situation, and Coressa had kept in contact with B.W. through in-person visits and telephone calls. B.W. was behaving well and

12

said he liked living with Amanda and having visits with his half-siblings. Amanda reported B.W. had no recent contact with Spencer and reasserted that B.W. was conceived through her rape by Spencer.

Spencer's counsel asked the court not to terminate jurisdiction, or to make an order granting him primary physical custody and shared legal custody of B.W. The court ordered the Department to assess the mothers' homes, ordered Coressa's counsel to prepare family law orders giving Amanda and Coressa shared legal and physical custody of B.W. and granting Spencer unmonitored visitation, and again entered and stayed its termination order pending the custody order hearing.

On January 24, 2023, the juvenile court held the custody order hearing, lifted its stay of the order terminating jurisdiction, and issued family law orders giving Coressa and Amanda shared legal and physical custody and giving Spencer unmonitored visitation, including a mediated schedule of in-person visits in Idaho for one week of summer break and one week of winter break, in-person visits in California if Spencer was in state, and virtual or phone visits for up to four hours per week.

Spencer timely appealed the termination of jurisdiction and exit orders in case number B326646.[4]

_____

[4]    Spencer's January 26, 2023 notice of appeal states that he appeals from the juvenile court's January 11, 2023 order that "terminated jurisdiction pending the receipt of the custody order granting the mothers joint legal and physical custody, and unmonitored visits for the father." Both parties construe this as an appeal from the termination of jurisdiction and exit order, as do we. (See *In re J.F.* (2019) 39 Cal.App.5th 70, 75-76 [where it is "reasonably clear" what the appellant is trying to appeal from,

13

This court consolidated Spencer's four appeals.

## DISCUSSION

A. *Mootness of Spencer's Appeals from the Removal Order, Interim Placement Orders, and Reasonable Services Finding*

As an initial matter, we consider the Department's argument that Spencer's appeal of the disposition order removing B.W. from his custody and his appeals of the two interim custody orders were rendered moot by the juvenile court's termination of jurisdiction and exit orders, as well as the Department's argument that Spencer's reasonable services appeal is moot.

### 1. *The Mootness Doctrine*

"Juvenile dependency appeals raise unique mootness concerns because the parties have multiple opportunities to appeal orders even as the proceedings in the juvenile court proceed." (*In re N.S.* (2016) 245 Cal.App.4th 53, 59.) "'[T]he critical factor in considering whether a dependency appeal is moot is whether the appellate court can provide any effective relief if it finds reversible error.'" (*In re Rashad D.* (2021) 63 Cal.App.5th 156, 163 (*Rashad D.*); see *In re D.P.* (2023) 14 Cal.5th 266, 275-276 (*D.P.*).) An "'appeal may become moot where subsequent events, including orders by the juvenile court, render it impossible for the reviewing court to grant effective relief.'" (*Rashad D.,* at p. 163.) "A reviewing court must "'decide

"[g]enerally, we must liberally construe a notice of appeal in favor of its sufficiency"]; see also Cal. Rules of Court, rules 8.100(a)(2), 8.405(a)(3).)

on a case-by-case basis whether subsequent events in a juvenile dependency matter make a case moot and whether [its] decision would affect the outcome in a subsequent proceeding."'" (*D.P.*, at p. 276.) "'"When no effective relief can be granted, an appeal is moot and will be dismissed."'" (*In re J.A.* (2020) 47 Cal.App.5th 1036, 1050-1051.)

Even when a case is moot, a court may exercise its "inherent discretion" to reach the merits of the dispute. (*In re D.P., supra,* 14 Cal.5th at p. 282.) Discretionary review generally is appropriate only when a case presents an issue of broad public interest that is likely to recur, when the controversy between the parties may recur, or when a material question remains for the court's determination. (See *ibid*.) *D.P.* identified several non-exhaustive additional factors for evaluating whether discretionary review of a moot case may be warranted. (See *id*. at pp. 284-286.) First, the court may consider whether the challenged jurisdiction finding could impact current or future dependency proceedings, for example, by influencing the child protective agency's decision to file a new dependency petition or the juvenile court's determination about further reunification services. (See *id*. at p. 285.) Second, the court may consider the nature of the allegations against the parent: "The more egregious the findings against the parent, the greater the parent's interest in challenging such findings." (*Id*. at p. 286.) Third, the court may consider whether the case became moot due to prompt compliance by parents with their case plan: "It would perversely incentivize noncompliance if mootness doctrine resulted in the availability of appeals from jurisdictional findings only for parents who are less compliant or for whom the court has issued additional orders." (*Ibid*.)

2.      *Spencer's Appeal of the Removal Order Is Not Moot*

As noted, the juvenile court terminated jurisdiction as to B.W. with an exit order awarding joint legal and physical custody to Amanda and Coressa, with unmonitored visitation for Spencer. The Department argues Spencer's appeals from the initial removal order and interim custody orders are moot. (See *Rashad D., supra,* 63 Cal.App.5th at p. 163 ["[a]n order terminating juvenile court jurisdiction generally renders an appeal from an earlier order moot"].) But "termination of dependency jurisdiction does not necessarily moot an appeal from a jurisdiction finding that directly results in an adverse juvenile custody order," so long as the appellant also appealed from the termination of jurisdiction and exit order. (*Id.* at p. 159.) "[T]o the extent an appellant argues, as here, that the challenged jurisdiction finding resulted in an adverse juvenile custody order and seeks to have that custody order set aside, in addition to the appeal from the jurisdiction finding, an appeal from the orders terminating jurisdiction and awarding custody is necessary for this court to be able to provide effective relief." (*Id.* at p. 164.)

We conclude Spencer's appeal of the removal order is not moot because he also appealed from the termination of jurisdiction and exit order, and his challenge is to a custody determination that continues to impact his parental rights, for which we may provide effective relief. As this court explained in *Rashad D., supra,* 63 Cal.App.5th 156, "in most cases . . . for this court to be able to provide effective relief, the parent must appeal not only from the jurisdiction finding and disposition order but also from the orders terminating jurisdiction and modifying the parent's prior custody status." (*Id.* at p. 159.)

16

Spencer also seeks relief that has an impact on the harm he complains of, namely the return of B.W. to his physical custody. "For relief to be 'effective,' two requirements must be met. First, the plaintiff must complain of an ongoing harm. Second, the harm must be redressable or capable of being rectified by the outcome the plaintiff seeks." (*D.P., supra,* 14 Cal.5th at p. 276.) "[R]elief is effective when it 'can have a practical, tangible impact on the parties' conduct or legal status,'" requiring "some effect on the plaintiff's legal status that is capable of being redressed by a favorable court decision." (*Id.* at p. 277.) "[S]peculative future harm" is insufficient to avoid mootness. (*Id.* at p. 278.) But "when a parent has demonstrated a specific legal or practical consequence that will be averted upon reversal, the case is not moot, and merits review is required." (*Id.* at p. 283.)

Here, Spencer has identified a harm affecting his ongoing legal rights: the juvenile court's removal of B.W. from his custody. As stated, the juvenile court terminated jurisdiction and released B.W. to the mothers' custody and not to Spencer. Reversal of the court's rulings would avert this consequence and return Spencer to the legal position of a custodial parent. Accordingly, Spencer's appeal from the removal order is not moot. (See *Rashad D., supra,* 63 Cal.App.5th at p. 164; *In re J.S.* (2011) 199 Cal.App.4th 1291, 1295 [juvenile court's order terminating jurisdiction did not moot the appeal from prior orders where the "exit orders [were] also pending appeal"].)

3.    *Spencer's Appeals of the Interim Custody Orders Are Moot*

Spencer's appeals from the interim custody orders, however, are moot. These appeals challenge the court's interim

17

custody determinations, and the orders did not modify Spencer's custody status between removal and termination. Although the initial removal had a continuing impact on dependency proceedings, there is no indication the court's interim custody determinations affected its final exit order. (Cf. *In re C.C.* (2009) 172 Cal.App.4th 1481, 1488 ["'An issue is not moot if the purported error infects the outcome of subsequent proceedings.'"].) This court can no longer provide relief from the juvenile court's decision not to return B.W. to Spencer during earlier stages of the dependency proceedings because these orders are no longer in effect, and there is no ongoing harm from these earlier determinations. (See *D.P., supra,* 14 Cal.5th at p. 283 [case is moot when there is no "specific legal or practical consequence that will be averted upon reversal"].) Now that dependency jurisdiction is terminated, B.W. is placed outside of Spencer's custody pursuant to the court's exit order, not its interim orders. (*See Heidi S. v. David H.* (2016) 1 Cal.App.5th 1150, 1165 ["the exit order 'shall be a final judgment and shall remain in effect after . . . jurisdiction is terminated'"]; see also § 362.4, subd. (b) [custody and visitation orders "continue until modified or terminated by a subsequent order of the superior court"].) And Spencer properly challenged the exit order in his fourth appeal, which we address in Part E.[5]

### 4. *Spencer's Reasonable Services Challenge Is Moot*

The parties do not dispute that Spencer was entitled to reunification services during the period B.W. was removed from

---

[5]  Spencer has not asked us to exercise our discretion to reach the merits of these moot orders. (See *D.P., supra*, 14 Cal.5th at pp. 282-286.)

18

all three parents.  When a child is removed from parental physical custody, "the court ordinarily must order child welfare services designed to facilitate the reunification of the family," and section 361.5 generally authorizes a maximum of 18 months of reunification services before parental rights must be terminated (which may be extended to 24 months under certain circumstances).  (*Michael G. v. Superior Court* (2023) 14 Cal.5th 609, 624 (*Michael G.*); § 361.5, subd. (a).)  This same complement of mandatory, time-limited reunification services applies where, as here, a previously noncustodial parent gains custody of a child but subsequently the child is removed.[6]  (See *In re Jaden E.* (2014) 229 Cal.App.4th 1277, 1281; *In re T.W.* (2013) 214 Cal.App.4th 1154, 1169-1170 (*T.W.*).)

At the six-month review hearing for a child not placed with any parent, "[t]here is a statutory presumption the child will be returned to parental custody unless the court finds the child's return would create 'a substantial risk of detriment to the physical or emotional well-being' of the child.  [Citation.] . . . [¶]  At this hearing the court must also determine whether reasonable reunification services have been offered or provided." (*Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 305 (*Bridget A.*); see § 366.21, subd. (e).)  "[T]o support a finding that services were reasonable, 'the record should show that the

---

[6]     When a child is removed from custodial parent care and placed with a previously noncustodial parent, reunification services for each parent are initially discretionary.  (See § 361.2, subd. (b)(3).)  If the child is subsequently removed from the previously noncustodial parent and placed in foster care, reunification services are mandatory.  (See *In re Jaden E., supra,* 229 Cal.App.4th at p. 1281; *T.W., supra,* 214 Cal.App.4th at pp. 1169-1170; *In re Joel T.* (1999) 70 Cal.App.4th 263.)

19

supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained reasonable contact with the parents during the course of the service plan, and made reasonable efforts to assist the parents in areas where compliance proved difficult.'" (*Michael G., supra,* 14 Cal.5th at p. 625, fn. 6.)

Spencer argues there is no evidence he was provided any reunification services between B.W.'s removal from his custody at the section 387 hearing and the six-month review hearing. But even if Spencer was not provided reasonable reunification services during this period, we cannot provide him effective relief. Generally, "[t]he remedy for the failure to provide . . . reunification services to a parent is to provide an additional period of reunification services to that parent *and* to make a finding on the record that reasonable services were not offered or provided to that parent." (*In re A.G.* (2017) 12 Cal.App.5th 994, 1005.) The additional period of reunification services extends the mandatory reunification period, and the record finding ensures the time without reasonable services does not count toward the statutory maximum before parental rights are terminated. (See *Michael G., supra,* 14 Cal.5th at p. 637.)

But a finding that Spencer received no reasonable services would provide him no benefit because the mandatory reunification period for all the parents stopped once B.W. was placed with Coressa. Thereafter, B.W. remained in a parent's custody until jurisdiction was terminated, and any danger of Spencer having his parental rights terminated also ended when jurisdiction was terminated. So long as the child remains in the physical custody of at least one parent (such as Coressa), "[t]he goal of the dependency proceedings—to reunify a child with at

20

least one parent—has been met." (*In re A.B.* (2014)
230 Cal.App.4th 1420, 1440.)  Moreover, "[t]he juvenile court is
no longer capable of ordering reunification services in the present
case given its subsequent termination of jurisdiction." (*In re
Damian L.* (2023) 90 Cal.App.5th 357, 369.)

Any conclusion on appeal that reasonable reunification
services were not provided to Spencer during the review period
would not provide him any meaningful relief due to the juvenile
court's termination of jurisdiction.  And any potential impact to
future dependency proceedings is speculative.[7]  (See *D.P., supra,*
14 Cal.5th at pp. 282-286.)  To the extent Spencer argues the
juvenile court abused its discretion by ordering enhancement
services at the six-month hearing, rather than continuing
reunification services, we address this argument in Part C.

B.      *The Juvenile Court Did Not Err in Sustaining the
        Section 387 Petition and Removing B.W. from Spencer's
        Custody*
        1.      *Governing Law and Standard of Review*
        When a child protective agency seeks to change the
physical custody of a dependent child from placement with a
parent to a more restrictive placement, the agency must file a
supplemental petition under section 387.  (See *T.W., supra,*

---

[7]      If a parent's reunification services were terminated for
failure to reunify with a child after removal, and the parent "has
not subsequently made a reasonable effort to treat the problems
that led to removal," reunification services may be bypassed in a
future dependency proceeding involving that child's sibling.
(§ 361.5, subd. (b)(10)(A)).  Spencer makes no argument this
exception would apply to the facts of this case.

214 Cal.App.4th at p. 1161; Cal. Rules of Court, rule 5.560(c).) "In the jurisdictional phase of a section 387 proceeding, the court determines whether the factual allegations of the supplemental petition are true and whether the previous disposition has been ineffective in protecting the child.  [Citations.]  If the court finds the allegations are true, it conducts a dispositional hearing to determine whether removing custody is appropriate.  [Citations.]  A section 387 petition need not allege any new jurisdictional facts, or urge different or additional grounds for dependency because a basis for juvenile court jurisdiction already exists.  [Citations.]  The only fact necessary to modify a previous placement is that the previous disposition has not been effective in protecting the child."  (*T.W.*, at p. 1161; see *In re D.D.* (2019) 32 Cal.App.5th 985, 989-990 (*D.D.*).)

        To remove a child from parental custody under section 387, the Department must prove by clear and convincing evidence that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor . . . and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody."  (§ 361, subd. (c)(1); see *D.D., supra,* 32 Cal.App.5th at p. 996 ["'When a section 387 petition seeks to remove a minor from parental custody, the court applies the procedures and protections of section 361.'"]; *T.W., supra,* 214 Cal.App.4th at p. 1163 [same].)

        We review the juvenile court's jurisdiction and disposition findings under section 387 for substantial evidence.  (See *T.W., supra*, 214 Cal.App.4th at p. 1161; *D.D., supra*, 32 Cal.App.5th at p. 990.)  "When reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the

22

appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011 (*O.B.*); see *In re V.L.* (2020) 54 Cal.App.5th 147, 149.) "In conducting its review, the court must view the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*O.B.,* at pp. 1011-1012.)

> 2. *Substantial Evidence Supports the Juvenile Court's Finding the Previous Disposition Had Not Been Effective in Protecting B.W.*

Spencer argues the juvenile court erred in sustaining the section 387 petition because substantial evidence did not support the court's finding his criminal history from 2002 to 2018 put B.W. at a substantial risk of harm in 2021 when the court ruled on the petition. He argues the most violent offenses were remote in time, there were no concerns with his visits with B.W., he had completed classes in 2014 on parenting and anger management, and also participated in a substance abuse recovery support group.

We conclude Spencer's past criminal history is substantial evidence supporting the juvenile court's ruling. Although "'[t]he parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate[,] [t]he focus of the statute is on averting harm to the child.' [Citation.] The court may consider a parent's past conduct as well as present

23

circumstances." (*In re N.M.* (2011) 197 Cal.App.4th 159, 169-170; see *In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1383 ["The court may consider past events in deciding whether a child currently needs the court's protection."].) Spencer's criminal history was somewhat distant in time, but it also involved violence he inflicted on those in a close relationship with him. These included his 2003 arrest for assault of an ex-girlfriend's child resulting in the infant suffering fractured bones, attempted strangulation of an ex-girlfriend in 2014, and domestic battery of the ex-girlfriend in 2015. (See *In re L.O.* (2021) 67 Cal.App.5th 227, 238 [past violent behavior in a relationship is the best predictor of future violence].)

Further, given the violent nature of Spencer's criminal history, which Spencer had not previously fully disclosed to the Department, the juvenile court could reasonably find that Spencer's criminal history placed B.W. at substantial risk of suffering serious physical harm, and that the court's previous disposition granting Spencer shared custody was not effective in protecting B.W.

3. *Substantial Evidence Also Supports Removal of B.W. from Spencer's Custody*

Spencer also contends the juvenile court erred in removing B.W. from his custody because there were reasonable means to protect him without removal, such as ordering the Department "to make unannounced home visits" and providing "family preservation services" and "housing assistance." Our review is whether substantial evidence supports the juvenile court's finding, by clear and convincing evidence, that there were no reasonable means by which B.W.'s physical health could be protected without removing him from Spencer's physical custody.

24

(See *T.W., supra,* 214 Cal.App.4th at p. 1163; see also § 361, subd. (c).) We conclude there is such substantial evidence. Spencer's residence in Idaho limited the Department's ability to provide direct services and assistance and prevented close oversight of such a placement. Given the distance and Spencer's criminal history, the juvenile court reasonably concluded it would be detrimental to release B.W. to a parent out of state "without the court having any real supervision or any real knowledge of a parent who had been convicted of a violent act against an infant." On substantial evidence review, "'"[w]e do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court."'" (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

Spencer also contends he was "open and forthcoming" with the Department, thus services would be effective in protecting Spencer. But, although Spencer disclosed some of his criminal history to the Department, he did not disclose the most pertinent items in his history for dependency purposes: his arrest for assault of a child and placement on Idaho's child protection registry. The Department first learned of this through the Idaho incidents reports received in May 2021, a year and a half later. And, in the Department's subsequent interview of Spencer, he claimed the child abuse and false charges were false, which could indicate minimization and failure to acknowledge his prior abuse. The court could reasonably conclude Spencer would not be forthcoming with the Department about his behavior or B.W.'s welfare if B.W. were placed with him.

25

C.    *The Juvenile Court Did Not Abuse Its Discretion By Ordering Enhancement Services for Spencer at the Six-month Review Hearing*

Spencer also appeals the juvenile court's order of enhancement services instead of continuing reunification services at the six-month review hearing.  Enhancement services are discretionary "'child welfare services offered to the parent not retaining custody, designed to enhance the child's relationship with that parent.'"  (*In re C.S.* (2022) 80 Cal.App.5th 631, 636; *In re Destiny D.* (2017) 15 Cal.App.5th 197, 212; see § 362, subd. (a).)  "Enhancement services" are authorized by the court's general authority to "make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child."  (§ 362, subd. (a); see *In re C.S.*, at p. 637; *In re A.L.* (2010) 188 Cal.App.4th 138, 142, fn. 2.)  Accordingly, an order for enhancement services is subject to the court's discretion.  (See *In re C.S.,* at p. 637; *In re Destiny D.*, at p. 212.)  Such orders are affirmed unless the juvenile court has "'''exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination.'''"  (*In re Destiny D.,* at p. 213.)

As stated, once B.W. was placed with a parent (Coressa) at the six-month review hearing, reunification services for Spencer were discretionary.  (See *In re Erika W.* (1994) 28 Cal.App.4th 470, 478 ["When a child is placed in nonparental custody, reunification services are necessary to promote a possible return of the child to parental custody.  However, when a child is placed in parental custody, this goal has already been met and therefore reunification services are not necessary."]; *In re Destiny D., supra,* 15 Cal.App.5th at p. 212 [because child was placed with her custodial parent, father was not entitled to reunification

26

services].)  Because Spencer was not entitled to reunification services after B.W. was placed with Coressa, the juvenile court did not abuse its discretion by ordering enhancement services rather than reunification services.

D.     *Substantial Evidence Supports the Juvenile Court's Termination of Jurisdiction over B.W.*

       1.     *Governing Law and Standard of Review*

       "Section 364, subdivision (a), requires the juvenile court to schedule a review hearing at least every six months for a dependent child who has not been removed from the physical custody of his or her parent or guardian.  Section 364 applies also in cases where a child had been removed from the physical custody of a parent but later returned."  (*In re T.S.* (2020) 52 Cal.App.5th 503, 512; see *In re Armando L.* (2016) 1 Cal.App.5th 606, 614.)  Dependency jurisdiction must be terminated at a section 364 review hearing unless the conditions that created the need for supervision still exist or are likely to exist if supervision is discontinued.  "After hearing any evidence presented by the social worker, the parent, the guardian, or the child, the court shall determine whether continued supervision is necessary.  The court shall terminate its jurisdiction unless the social worker or his or her department establishes by a preponderance of evidence that the conditions still exist which would justify initial assumption of jurisdiction under Section 300, or that those conditions are likely to exist if supervision is withdrawn."  (§ 364, subd. (c); see *In re Shannon M.* (2013) 221 Cal.App.4th 282, 290-291 [§ 364, subd. (c), establishes a "statutory presumption in favor of terminating jurisdiction and returning the children to the [custodial] parents' care without

27

court supervision"].)  "'The juvenile court makes this determination based on the totality of the evidence before it.'" (*In re T.S.,* at p. 513; see *In re Armando L.,* at p. 615.)

Orders terminating jurisdiction pursuant to section 364 are reviewed for substantial evidence.  (See *In re Aurora P.* (2015) 241 Cal.App.4th 1142, 1156.)  The party challenging the juvenile court's termination of jurisdiction has the burden of proving that conditions justifying assumption of jurisdiction continued to exist or would exist if supervision were withdrawn.  (See *id.* at pp. 1155-1156.)  Where a parent is appealing a termination of jurisdiction order, the court considers "'whether [undisputed] evidence compels a finding in favor of [the parent] as a matter of law.'"  (*Id.* at p. 1163; see *In re Janee W.* (2006) 140 Cal.App.4th 1444, 1452 [If undisputed evidence "supports a finding that there is no need for continued supervision, we may affirm the order terminating jurisdiction."].)

2.  *Substantial Evidence Supports the Order Terminating Jurisdiction*

At the outset, the Department argues Spencer forfeited his challenge to the termination of jurisdiction because his counsel made no argument that continued supervision was necessary at the initial section 364 review hearing (at which the court first ordered termination, which it stayed pending custody mediation). This argument is unpersuasive.  "[F]orfeiture generally applies when a party did not alert the juvenile court that he or she objected to an order being made or when a party failed to ask in the juvenile court for relief being sought on appeal." (*In re Malick T.* (2022) 73 Cal.App.5th 1109, 1127.)

28

At the initial section 364 hearing, Spencer's counsel asked the court to order the Department to provide services to promote family stability if it did not grant Spencer custody and did not terminate jurisdiction, which may be reasonably construed as a request for continued supervision.[8]  And, at the second section 364 review hearing (at which termination was again ordered and stayed), Spencer's counsel expressly asked the court to keep the case open if it did not grant him primary physical custody and shared legal custody of B.W.  Spencer's notice of appeal specifically stated that he appealed from the order terminating jurisdiction at the second section 364 review hearing.

---

[8]     The court denied a request by Spencer's counsel for a continuance of the first section 364 review hearing so that counsel could obtain and review recent case activity notes for evidence of any enhancement services provided to Spencer.  A juvenile court has discretion to continue a hearing upon a showing of good cause, provided the continuance is not contrary to the interest of the child.  (See *In re Elizabeth M.* (2018) 19 Cal.App.5th 768, 779-780; see § 352, subd. (a)(1).)  But at a section 364 hearing, the court examines whether further dependency proceedings are necessary or should be terminated, not whether a noncustodial parent has received reasonable services.  (See § 364; *In re Pedro Z.* (2010) 190 Cal.App.4th 12, 19-21.)  Because enhancement services for a noncustodial parent are discretionary (see § 362, subd. (a); *In re Destiny D., supra,* 15 Cal.App.5th at p. 213), and because the court's consideration of the child's best interest "give[s] substantial weight to a minor's need for prompt resolution of his or her custody status" (*In re Elizabeth M.*, at p. 779), under the circumstances presented, the court did not abuse its discretion by denying a continuance.

In all events, the evidence amply supports the juvenile court's termination of jurisdiction. At the time of the hearing terminating jurisdiction, B.W. had been living successfully with Coressa for six months. Coressa was meeting his basic needs. He had regular overnight visits with Amanda, which he reported he enjoyed. Amanda had completed a 10-week parenting program and at least six months of individual counseling, and there had been no reports of any domestic violence between the mothers for over a year and a half. This is substantial evidence that the conditions that justified the assumption of jurisdiction—the mothers' domestic violence and Amanda's failure to ensure adult supervision—no longer existed and would not exist if juvenile court supervision were withdrawn.

E.    *The Juvenile Court Did Not Abuse its Discretion by Granting Joint Physical Custody to Amanda and Coressa with Unmonitored Visitation for Spencer in its Exit Order*

1.    *Governing Law and Standard of Review*

"When terminating its jurisdiction over a child who has been declared a dependent child of the court, section 362.4 authorizes the juvenile court to issue a custody and visitation order (commonly referred to as an 'exit order') that will become part of the relevant family law file and remain in effect in the family law action 'until modified or terminated by a subsequent order.'" (*In re T.S., supra,* 52 Cal.App.5th at p. 513; see *In re Ryan K.* (2012) 207 Cal.App.4th 591, 594, fn. 5; *In re T.H.* (2010) 190 Cal.App.4th 1119, 1122.) When making a custody determination under section 362.4, "'the court's focus and primary consideration must always be the best interests of the child.'" (*In re T.S.,* at p. 513; accord, *In re Chantal S.* (1996)

13 Cal.4th 196, 206; see *In re J.M.* (2023) 89 Cal.App.5th 95, 112 ["'[I]n making exit orders, the juvenile court must look at the best interests of the child,'" "guided by the totality of the circumstances."].)  The court's custody determination is "not restrained by 'any preferences or presumptions.'  [Citation.]  Thus, for example, a finding that neither parent poses any danger to the child does not mean that both are equally entitled to half custody, since joint physical custody may not be in the child's best interests for a variety of reasons."  (*In re Nicholas H.* (2003) 112 Cal.App.4th 251, 268.)

We review the juvenile court's exit order for abuse of discretion.  (See *In re Stephanie M.* (1994) 7 Cal.4th 295, 318; *In re Maya L.* (2014) 232 Cal.App.4th 81, 102; *Bridget A., supra,* 148 Cal.App.4th at pp. 300-301.)  Under this standard, "'"a reviewing court will not disturb [the custody determination] unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination."'"  (*In re Stephanie M.*, at p. 318.)

2.     *The Juvenile Court Did Not Abuse Its Discretion by Determining Shared Custody to the Mothers, with Unmonitored Visitation for Spencer, Was in B.W.'s Best Interest*

Spencer contends the juvenile court abused its discretion by issuing an exit order granting joint custody to Amanda and Coressa, with visitation to Spencer.  He argues he was better suited than the mothers to care for B.W. in Idaho, given their history of domestic violence and his stability and support networks.

We conclude the juvenile court did not abuse its discretion. B.W. lived with his two mothers most of his life before the underlying dependency proceedings began, and he was bonded with both of them. As of early January 2023, B.W. had successfully lived with Coressa for several months with positive overnight visits with Amanda, then B.W. lived with Amanda while Coressa stabilized her housing situation, and Coressa had kept in contact with B.W. through in-person visits and telephone calls. B.W. was behaving well, enjoyed living with Amanda, and enjoyed visits with his half-siblings. The record before us indicates there had not been incidents of domestic violence between Amanda and Coressa for over two years at the time of the exit order, both mothers willingly participated in services and worked diligently on their case plans to reunify with B.W., Coressa moved back from Idaho to be near B.W., and they each served as B.W.'s primary custodial parent at different periods of the dependency proceedings.

By contrast, Spencer was not involved in B.W.'s life until early 2020 (when he was age three and a half), Spencer was never a primary custodial parent, he lived out of state in Idaho, and he did not see B.W. regularly. Although Spencer initially had regular phone contact with B.W. and in-person visits in November 2020 and January 2021, his visits declined after B.W. was detained from him in August 2021. Amanda reported B.W. and Spencer last had contact in December 2021. B.W. had also been removed from Spencer due to Spencer's criminal record and prior substantiated child abuse allegations, which Spencer had not fully disclosed to the Department.

Although Spencer's interest in having a relationship with B.W. and providing a home for his son is laudable, under the

32

totality of the circumstances, we cannot say the court abused its discretion by granting joint legal and physical custody to the mothers and not to Spencer.  (See *In re Jennifer R.* (1993) 14 Cal.App.4th 704, 713 [no abuse of discretion awarding custody to parent where other was "irregular in her visitation" with the child]; see also *In re Maya L., supra,* 232 Cal.App.4th at p. 103 [no abuse of discretion awarding custody given "evidence that father provided excellent care for [child]" and they "shared a strong, loving bond"].)

## DISPOSITION

The juvenile court's jurisdiction findings and disposition orders on the section 387 petition regarding B.W. are affirmed. We dismiss as moot Spencer's appeals of the interim placement orders and his reasonable services challenge.  The juvenile court's order of enhancement services at the six-month review hearing is affirmed, as is its denial of Spencer's request for continuance of the first section 364 review hearing.  The juvenile court's termination of jurisdiction and exit orders are affirmed.

MARTINEZ, P. J.

We concur:


FEUER, J.


STONE, J.

33